IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MICHAEL SELLERS AND                                    PLAINTIFFS
BELINDA SELLERS

VS.                                   CIVIL ACTION NO. 4:09CV15TSL-LRA

OSYKA PERMIAN, LLC, OSYKA                              DEFENDANTS
CORPORATION, MURPHY INDUSTRIES
INC., BAIRD MANUFACTURING COMPANY

AND

AMERICAN HOME ASSURANCE COMPANY                        INTERVENOR


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motions of defendants
Osyka Permian, LLC and Osyka Corporation to set aside default
judgment, for leave to file answer to complaint and for stay of
proceedings/damages hearing.  Plaintiffs Michael and Belinda
Sellers have responded in opposition to the motions, and the
court, having considered the memoranda of authorities, together
with attachments, submitted by the parties, concludes that the
motions are well taken and should be granted.

Plaintiffs commenced this action on January 28, 2009,
alleging that in February 2006, Michael, an employee of Oilwell
Hydraulics, was injured while servicing a hydraulic pump at a well
site owned, operated and maintained by the Osyka defendants.
Specifically, the complaint alleges that Michael was blown several
feet into the air when a discharge line near him exploded,
resulting in injury to his ankles, shoulders, back, neck and eyes.
According to the complaint, the Osyka defendants were negligent

with regard to the maintenance of the discharge line in that they:
(1) permitted a road to be constructed over and across the line,
which was designed and intended to be elevated above ground; (2)
permitted vehicles to drive across the line; (3) permitted the
discharge line to be in contact with soil, gravel and water, which
allowed deterioration of the line; and (4) failed to inspect,
repair and replace the section of the discharge line which
exploded.  Plaintiffs further allege that the Osyka defendants
failed to inspect, maintain, repair and replace the "Murphygage
kill switch" and other components which, if working properly,
would have prevented pressure from building in the discharge line.
As to defendants Murphy Industries and Baird Manufacturing
Company, plaintiffs allege that the kill switch manufactured by
Murphy and a valve manufactured by Baird, which were located at
the well site on the day of Michael's injury, were defective and
created an unreasonably dangerous condition.

On February 2, 2009, the Sellers served process on Osyka
Permian, LLC, a Texas entity registered and doing business in
Mississippi, through its registered agent for service of process,
CT Corporation, and on February 6, 2009, plaintiffs effected
service of process on Osyka Corporation, a Texas corporation, via
personal service.  On March 5, 2009, no answer having been filed
on behalf of either of the Osyka defendants, the Sellers moved for
a clerk's entry of default.  Default was entered the following
day, March 6.  That same day, plaintiffs filed their motions for

2

default judgment, and on March 16, 2009, the court entered a default judgment on liability, with a hearing on damages to be held at a later time. On March 27, 2009, the Osyka defendants filed their present motion to set aside the default judgment pursuant to Federal Rule of Civil Procedure Rule 60(b) and for leave to file an answer.[1] For the reasons that follow, the court

---

[1] 
In addition to seeking relief from default under Rule 60(b), the Osyka defendants asserted a number of additional grounds for vacating the default judgment. Among other bases, they argued that this court lacks subject matter jurisdiction over this cause, in light of 28 U.S.C. § 157(b)(5), which provides,

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

The Osyka defendants argued that since they have both filed for bankruptcy protection in the Southern District of Texas, then the only court that can have subject matter jurisdiction over this case is the Texas bankruptcy court or the federal district court in the Southern District of Texas, and that this court therefore lacked jurisdiction to enter the default judgment against them. However, § 157(b)(5), on which this argument is based, relates to venue, not jurisdiction, see Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824, 834 (5th Cir. 1993); and, while objections to subject matter jurisdiction cannot be waived, "a party in default waives any objection to venue," Rogers v. Hartford Life and Acc. Ins. Co., 167 F.3d 933, 942-943 (5th Cir. 1999). Thus, the Osyka defendants' argument that this is not a proper venue, even if correct, is not a proper basis for setting aside the default judgment. See id. (citing Williams v. Life Sav. & Loan, 802 F.2d 1200, 1202 (10th Cir. 1986) ("[I]f a party is in default by failing to appear ... defects in venue are waived, a default judgment may be validly entered and the judgment cannot be attacked collaterally for improper venue.")).
The Osyka defendants have also objected that this court lacks personal jurisdiction over Oyska Corporation. Unlike venue, "a party's right to contest personal jurisdiction is not waived by his failure to appear at all." Jackson v. FIE Corp., 302 F.3d 515, 523 (5th Cir. 2002). However, since the court concludes that the default judgment should be set aside for other reasons, the court does not at this time consider or address the Osyka defendants' personal jurisdiction arguments.

3

is persuaded that it should exercise its discretion to grant

relief from judgment pursuant to Rule 60(b)(1) and allow the Osyka

defendants to file their answers in this case.

As the parties recognize, the decision to grant or deny a

motion to set aside a default judgment under Rule 60(b) rests

within the trial court's discretion and is, at bottom, an

equitable one.  United States v. One Parcel of Real Property, 763

F.2d 181, 183 (5th Cir. 1985)).  Rule 60(b) is a "remedial

provision intended to prevent injustice by allowing parties their

day in court even though some technical error has occurred which

would otherwise be grounds for default."  Greater Baton Rouge Golf

Assoc. v. Recreation and Park Comm'n, 507 F.2d 227, 228 (5th Cir.

1975).  Rule 60(b)(1) provides relief from a default judgment that

results from "mistake, inadvertence, surprise, or excusable

neglect," and "is understood to encompass situations in which the

movant's failure to respond is attributable to his own

negligence."  Fine v. Evergreen Aviation Ground Logistics

Enterprise, Inc., No. 2:07-CV-165, 2009 WL 793753 (E.D. Tex. March

20, 2009) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs.

---

The Oskya defendants have further argued that plaintiffs failed
to give them the requisite notice under Rule 55(b)(2) of their
motion for entry of default and default judgment.  However, inasmuch
as it is apparent that the Osyka defendants' counsel had not entered
an appearance in this action, as opposed to having appeared in the
Osyka defendants' bankruptcy proceedings, this argument clearly
fails.  Rogers, 167 F.3d at 937 (procedural framework established by
Rules 4(m) and 12 "implies that a defendant can not make an
appearance for purposes of Rule 55(b)(2) until after the plaintiff
effects service and the defendant becomes susceptible to default").

<u>Ltd. Partnership</u>, 507 U.S. 380, 394, 113 S. Ct. 1489, 123 L. Ed.

2d 74 (1993)).  Rule 60(b)(1) is to be liberally construed to

ensure that doubtful cases are resolved on the merits.  <u>Rogers v.</u>

<u>Hartford Life and Acc. Ins. Co.</u>, 167 F.3d 933, 938 (5th Cir. 1999)

(citing <u>Harrell v. DCS Equip. Leasing Corp.</u>, 951 F.2d 1453, 1459

(5th Cir. 1992) ("This court applies Rule 60(b) 'most liberally to

judgments in default ... [because] ... [t]runcated proceedings of

this sort are not favored.' ") (internal citations omitted))..

> The Fifth Circuit has directed the district court to
>
> consider three factors in determining whether sufficient
> grounds exist for setting aside a default judgment under Rule
> 60(b)(1):  "(1) the extent of prejudice to the plaintiff; (2)
> the merits of the defendant's asserted defense; and (3) the
> culpability of [the] defendant's  conduct."  <u>Hibernia Nat'l
> Bank v. Administracion Central Sociedad Anonima</u>, 776 F.2d
> 1277, 1280 (5th Cir. 1985); <u>see also</u> <u>Amberg v. FDIC</u>, 934 F.2d
> 681, 686 (5th Cir. 1991). These factors are not "talismanic."
> <u>See</u> <u>CJC Holdings, Inc. v. Wright & Lato, Inc.</u>, 979 F.2d 60,
> 64 (5th Cir. 1992).  A district court may consider other
> factors. . . .  <u>See</u> <u>Hibernia</u>, 776 F.2d at 1279 [(wherein
> district court abused its discretion by failing to consider
> defendant's affirmative defense in denying its motion for
> relief from judgment)].

<u>Id.</u> at 938-39.  <u>See</u> <u>also</u> <u>Pioneer</u>, 507 U.S. at 398, 113 S. Ct. at

1495 (examining "excusable neglect" in the context of Bankruptcy

Rule 9006(b)(1), which permits late filing if missed deadline "was

the result of excusable neglect" and approving consideration of

following factors:  "the danger of prejudice to the debtor, the

length of the delay and its potential impact on judicial

proceedings, the reason for the delay, including whether it was

within the reasonable control of the movant, and whether the

movant acted in good faith"); <u>Halicki v. Louisiana Casino Cruises,</u>

Inc., 151 F.3d 465, 469 (5th Cir. 1998) (examining "excusable

neglect" under Federal Rule of Appellate Procedure 4(a) and (b),

and stating that "the Pioneer Court's construction of 'excusable

neglect' was apparently generally applicable, as the Court claimed

to be adopting 'the commonly accepted meaning of the phrase'")

(internal quotation and citation omitted).

In the case at bar, the Osyka defendants maintain their

default was the result of "excusable neglect," explaining the

circumstances by which the default occurred as follows:  In the

early part of February 2009, Michael Harness, a director of Osyka

Permian, received the summonses and complaints that had been

served on both defendants.  He forwarded them to insurance broker

John L. Wortman, assuming that Osyka's interests would be

protected and timely defense mounted.  On February 6, 2009, a

representative of Wortman emailed the suit papers to Steve Hintze,

a claims handler for Travelers, Osyka's insurer.  As Travelers'

claims handler, it was Hintze's duty to receive new lawsuits,

enter the required information in the Travelers system,

investigate the allegations and assign defense counsel when a duty

to defend is found to be owed.  Although Hintze had a general

awareness of the Sellers' intention to pursue claims against the

Osyka defendants as a result of their having sought relief from

the automatic stay in the Osyka defendants' bankruptcy so that

they could pursue their claims, he had not been apprised that the

bankruptcy court had entered an order in November 2008 lifting the

6

stay, nor did he have personal knowledge that the Sellers had filed suit in this court on January 28, 2009. On February 6, 2009, the day the lawsuit papers were emailed to his office, Hintze was out of the state attending a family reunion. According to Hintze, on February 10, he remotely accessed his work email account from home and electronically forwarded all his emails and attachments to his office printer, with the intention of reading them when he returned to the office on February 12. However, the Wortman email and suit papers had been misfiled, and were not found by Hintze until he received the notice of default from Osyka on March 17.

Upon learning of the entry of default, Hintze immediately undertook to obtain counsel for the action. The first attorney he contacted determined he had a conflict and declined representation, following which Hintze contacted and retained Osyka's present counsel, who promptly filed the current motions.

The Osyka defendants contend that equity favors granting them relief from judgment because their default was not willful; plaintiffs will not be prejudiced by a trial on the merits; they have a meritorious defense; the court has not yet established damages; and they acted promptly to cure their default. For their part, plaintiffs do not contend that the default was willful, but they maintain that the Osyka defendants' default does not qualify as "excusable neglect" since the Oskya defendants and Travelers "are culpable for their own default" as a result of their failure

7

"to institute minimum procedural safeguards to prevent the entry of such a default"; since the Osyka defendants' gross carelessness in failing to preserve a vital piece of evidence, the Baird valve, in spite of a clear duty to do so, "has resulted in significant prejudice to the Plaintiffs' case against the Osyka Defendants as well as against the other Defendants in this case"; and since the Osyka defendants have no colorable defense to plaintiffs' claims herein.

As the court has indicated and the parties clearly recognize, the extent of prejudice to the plaintiffs is a factor for the court to consider in deciding whether to set aside a default judgment. The court may deny the Osyka defendants' motion if it finds the Sellers will be prejudiced by the reopening of the case. Rogers, 167 F.3d at 938; Pioneer, 507 U.S. at 395, 113 S. Ct. at 1498. This being said, "the mere possibility of prejudice from delay, which is inherent in every case, is insufficient to require denial of a 60(b)(1) motion." Hibernia, 776 F.2d at 1280. Plaintiffs urge that if the default judgment is set aside, they will be prejudiced because the Osyka defendants lost a key item of evidence which plaintiffs need in order to establish their claim against Baird, another of the defendants. According to plaintiffs, notwithstanding that in March 2008, they requested that the Osyka defendants "secure and preserve all records which relate to this matter," and notwithstanding that the Osyka defendants were aware from the Sellers' filings in the Osyka

8

bankruptcy proceedings that the Sellers intended to pursue tort claims for Michael Sellers' injuries, the Osyka defendants failed to preserve evidence, by not only allowing significant changes to be made to the well site where Michael Sellers was injured but also by allowing a key piece of evidence, a valve manufactured by defendant Baird, to go missing.

In response, the Osyka defendants maintain that plaintiffs' March 2008 request that they "preserve all records relating to this matter" (which request, they note, was not even made until two years after the accident), did not require them to refrain from making improvements and modifications to the well site. Furthermore, while the Osyka Defendants admit that the Baird valve cannot be found, they deny that they caused its disappearance. Instead, the Osyka defendants maintain that after the valve had been removed from the well site during a March 18, 2009 conversion of the well from gas to electric power, it was placed in a "junk pile" on their property, which is used to save and store old parts. The Osyka defendants maintain they never intended to dispose of the valve but rather intended that it would remain on the "junk pile," and that in fact, they did not dispose of the valve. However, during a site inspection by the parties less than a week after the valve was placed on the "junk pile," the valve could not be located.[2]

---

2

    The Osyka defendants note that two other Baird valves, which were replaced at the same time as the one relevant to this case, were still on the junk pile at the time of the inspection, and

9

The court is not persuaded that the Sellers have shown that they will suffer prejudice by reopening the action against the Osyka defendants.  Initially, the court agrees with the Osyka defendants that the March 2008 request to preserve records, made two years after Sellers' injury, is not tantamount to a request that defendants preserve the well site as it existed the day of Sellers' injury.  Further and more importantly, the prejudice plaintiffs claim they will suffer from the loss of the Baird valve will exist regardless of whether or not the case against the Osyka defendants is reopened.  Plaintiffs do not seriously contend that they will be prejudiced in the prosecution of their claims *against the Osyka defendants* by the reopening of the case against the Osyka defendants but that as a result of the Osyka defendants' loss of the Baird valve, plaintiffs have been prejudiced in their efforts to prove their claim against Baird.  It is clear to the court that this alleged prejudice cannot be avoided or eliminated by maintaining in place the default judgment against the Osyka defendants.  That is, even were the court to deny the current motion, under their argument, plaintiffs' ability to prove their claim against Baird remains impaired.  What plaintiffs actually

---

speculate that someone perhaps recognized the importance of the valve and took it.

In a related vein, the Osyka defendants have presented the affidavit of their well manager who states that another item of evidence, the Murphygage from the well site, which was replaced soon after the accident and thrown into the on-site junk pile, is also missing.  According to the affidavit, it is the well manager's understanding that "Sellers or his attorney has the Murphy gage in their possession."

10

seek is to punish the Osyka defendants for their alleged

spoliation of evidence vital to plaintiffs' claims against Baird.

While it may ultimately develop that the Osyka defendants should

bear some responsibility for the alleged loss of the Baird valve

and any attending difficulties which plaintiffs may encounter in

proving their case against Baird and that some manner of remedy

against the Osyka defendants is warranted, in the court's opinion,

that is an issue which should be decided after discovery and full

briefing and not simply as a preliminary matter.  The prejudice

plaintiffs claim does not at this time warrant denial of the

motion for relief from the default judgment.

The Osyka defendants also maintain that they have a

meritorious defense.  Specifically, pointing to <u>Jackson Ready-Mix

Concrete v. Sexton</u>, they contend that as owner/s of the premises,

under Mississippi law, they had "no duty to protect [independent

contractor and employees thereof] against risks arising from or

intimately connected with defects of the premise, or of machinery

or appliances located thereon, which the contractor has undertaken

to repair."  235 So. 2d 267, 271 (Miss. 1970).  In support of this

affirmative defense,[3] the Osyka defendants have presented the

_____

[3]

The Osyka defendants further suggest that Sellers may have been
contributorily negligent and that defendants Baird and Murphy are
either partially or totally at fault for Michael's injuries.
Chancellor has purported to offer testimony on these defenses as
well.  However, as plaintiffs point out, his testimony regarding
these theories amounts to only a conclusion that Michael would not
have been injured if he had performed the work properly or had been
more alert to a possibly defective Murphy gauge or Baird valve.

11

affidavit of William Chancellor, an independent pump contractor

who services Osyka Permian's well sites.[4]  According to his

affidavit, on February 1, 2006, Chancellor discovered the problem

with the pressure at the fluid end of Lightsey UN 15-5 well.

Because Oilwell Hydraulics, Michael's employer, had the required

expertise and had for years performed routine maintenance on the

well, Chancellor contacted them to service the current problem.

According to Chancellor, he did not know and had no reason to know

of a dangerous condition associated with the well, other than the

pressure problem which Oilwell Hydraulics had been hired to

repair, and he left the particulars of the pressure problem--what

caused it and how it should be repaired--to the discretion of

Oilwell Hydraulics, which, in turn, chose Michael to service the

well.  According to Chancellor's affidavit, Oilwell Hydraulics'

familiarity with the inherent dangers of working in an oilfield in

general and its familiarity with Lightsey UN 15-5 in particular

should have guided it in determining whether Michael was the best

person for the job and whether it was safe for him to work alone

at the well site.

---

[4]

    The Osyka defendants also point to the affidavit of Michael
Harness as support for the defense.  As is arguably pertinent to the
proffered defense, Harness's affidavit recites:

> From what I know about the incident I do not think that
> Osyka has any responsibility. Our contract pumper, William
> Chancellor, had discovered a problem with a pump and
> reported the problem to Oilfield Hydraulics in Laurel,
> Mississippi so they could assign an employee or crew to
> repair the problem.  Oilfield Hydraulics had done work on
> this site for years, as I understand it.

While plaintiffs assert that defendants may not rely on the above-cited exception to the general rule that the owner/occupier owes a duty to provide a reasonably safe place for work or to warn a business invitee or his employers/supervisors of the danger involved because Michael did not work on the Murphygage, the Baird valve or the fluid line which blew up and because Oilwell Hydraulics "was merely a part supplier and service company," not an independent contractor, the court is satisfied that the Osyka defendants have provided definite factual allegations, as opposed to mere legal conclusions, in support of their defense. See Jenkens & Gilchrist v. Groia & Company, 542 F.3d 114, 121 (5th Cir. 2008)(stating that a defendant must make a "clear and specific showing ... by [a] definite recitation of facts" that the defendant has a valid defense) (citing Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1969)). Further, their "'defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" Id. (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993) and citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil 3d § 2697 (1998) ("The underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.")).

Turning to the question of culpability, the Osyka defendants

urge that neither their actions nor those of their representative

can be deemed "willful," but instead were the result of excusable

neglect of a seasoned claims handler who has never, in thirty-

eight years, failed to ensure that a complaint was timely

answered.  For their part, plaintiffs, citing this court's opinion

in Rogers v. ITT Hartford Life and Accident Company, 178 F.R.D.

476 (S.D. Miss. 1997), aff'd, 167 F. 3d 933 (5th Cir. 1999), argue

that since neither the Osyka defendants nor Travelers have shown

that they had in place any procedural "safeguards" to "ensure that

the civil process properly communicated, followed up, and timely

reported to," it follows that their failure to timely answer

cannot be excused.  The court agrees that had the Osyka defendants

had in place "minimal procedural safeguards," they probably would

not have defaulted.  However, in keeping with the Supreme Court's

explication of "excusable neglect" in Pioneer, the court's

determination of excusable neglect is a multi-factorial inquiry,

in which the party's culpability is only one consideration.  See

Pioneer, 507 U.S. at 395, 113 S. Ct. at 1498 (factors to consider

in determining whether neglect was "excusable" include "danger of

prejudice to the debtor, the length of the delay and its potential

impact on judicial proceedings, the reason for the delay,

including whether it was within the reasonable control of the

movant, and whether the movant acted in good faith").  Here, the

court has found that plaintiffs will not be prejudiced by

reopening the case against the Osyka defendants and that the Osyka

defendants have shown that they have a meritorious defense (unlike the scenario in <u>Rogers</u>).  Moreover, it is clear that the default was not willful, i.e., an intentional failure to respond.  These circumstances, taken together with the fact that this multi-party case is still in the discovery phase and the fact that after learning of the default judgment, the Osyka defendants acted swiftly to have it set aside, the court is persuaded that the motions should be granted.

Accordingly, based on the foregoing, it is ordered that the Osyka defendants' motions to set aside default judgment, for leave to file answer to complaint and for stay of proceedings/damages are granted.

SO ORDERED this 20th day of August, 2009.


                            /s/Tom S. Lee
                            UNITED STATES DISTRICT JUDGE